UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:22-cv-22465-JEM/Becerra

JOSEPH C. ISSRAIL BADRA, *et al.*,

    Plaintiffs,

v.

UR M. JADDOU, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION ON
PLAINTIFFS' EXPEDITED MOTION FOR PRELIMINARY INJUNCTION
AND DEFENDANTS' MOTION TO DISMISS**[1]

**THIS CAUSE** first came before the Court upon Plaintiffs' Expedited Motion for Preliminary Injunction (the "Motion for Preliminary Injunction"), ECF No. [4]. In response, Defendants filed a Motion To Dismiss For Lack Of Subject Matter Jurisdiction, Or In The Alternative, For Failure To State A Claim For Which Relief Can Be Granted And Opposition To Plaintiffs' Motion For Expedited Preliminary Injunction ("Defendant's Motion to Dismiss"). ECF Nos. [11], [12].[2] Plaintiffs filed their Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiffs' Expedited Motion for a Preliminary Injunction. ECF No. [15]. On September 1, 2022, the Court heard oral argument on this matter (the "Hearing"). ECF No. [17]. At the Hearing, the Court permitted Defendants (the "Government") to file a Reply to their Motion to Dismiss, which the Government did. ECF No. [19]. The Court also permitted Plaintiffs to file

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF Nos. [5], [18].

[2] Defendants filed a Motion To Dismiss For Lack Of Subject Matter Jurisdiction, Or In The Alternative, For Failure To State A Claim For Which Relief Can Be Granted And Opposition To Plaintiffs' Motion For Expedited Preliminary Injunction, which was filed twice, at ECF Nos. [11] and [12].

1

a Surreply to Defendants' Motion to Dismiss, which they did. ECF No. [22]. Upon due consideration of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss, ECF No. [12], be **GRANTED** and that Plaintiffs' Motion for Preliminary Injunction, ECF No. [4], be **DENIED AS MOOT**.

I.   BACKGROUND

Plaintiffs Joseph C. Issrail, his wife Yesika, and their two minor children G.S.I.K. and G.I.K., are Venezuelan citizens. ECF No. [4] at 15. While living in Venezuela, they received a series of threats that culminated in Plaintiff Joseph C. Issrail's abduction by members of a *colectivo* who pistol-whipped him and threatened him with mutilation and death. *Id.* Plaintiffs came to the United States in the hopes that "the situation in Venezuela would 'cool down.'" *Id.* Plaintiffs entered the United States on October 15, 2017, on a B-2 nonimmigrant visa, which was valid until April 14, 2018.

Contrary to their hopes, the threats against Plaintiffs in Venezuela continued. *Id.* As a result, on February 8, 2018, before Plaintiffs' B-2 visitor status was set to expire, Mr. Issrail filed an application for asylum, which included the other Plaintiffs as dependents. *Id.* The USCIS's Miami Asylum Office confirmed receipt of Plaintiffs' application and informed Plaintiffs, by notice issued the day after Mr. Issrail submitted his application, that Plaintiffs could "remain in the U.S. until [the] asylum application is decided." *Id.* at 16. Mr. Issrail's asylum petition still remains pending today, over four years after it was filed. *Id.*

While Mr. Issrail's asylum petition was pending, the Secretary of Homeland Security designated Venezuela for Temporary Protected Status ("TPS") for 18 months.[3] *Id.* Plaintiffs

---

[3] *See* ECF No. [4] at 27 n.5 ("TPS is—by definition—a *temporary* [immigration] status that expires unless the Secretary of Homeland Security makes a discretionary decision to extend the status.") (citing 8 U.S.C. § 1254a(b)(3)(B)).

applied for TPS on May 26, 2021, and their applications were approved on February 26, 2022. *Id.*

Although the family is legally in this country given both the pending asylum application and their TPS, they entered the Diversity Visa Lottery, which offers noncitizens the opportunity to apply for lawful permanent resident status—that is, to apply for a "green card." *Id.* at 10. The family won the 2022 Diversity Visa Lottery on May 8, 2021. *Id.* Given their selection, Plaintiffs filed applications for adjustment of status a few days later. *Id.*

However, on July 25, 2022, USCIS denied Mr. Issrail's application. *Id.* at 16. USCIS's basis to deny their adjustment forms the basis of the Complaint in this case. Defendants denied Plaintiffs' application because Defendants contend that Plaintiffs were subject to one of the bars to adjustment of status detailed in Section 1255(c), which details the rules of adjustment of status. *Id.* at 16–17. The relevant provision of the statute "provides that a noncitizen is disqualified from adjustment of status if he or she: 'has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States.'" *Id.* at 14 (quoting 8 U.S.C. § 1255(c)(2)). Lawful *status* does not refer to whether someone is lawfully *present* in the United States. Indeed, although Plaintiffs were permitted to legally remain in the United States while their asylum petition was pending, Defendants argue that the regulations define "lawful immigration status" for purposes of 8 U.S.C. § 1255(c)(2) as limited to six specific types of status, none of which include pending asylees. Specifically, those six types of status are: (1) lawful permanent resident; (2) admitted as a nonimmigrant and whose initial period of admission has not expired or has been extended; (3) refugee; (4) asylee; (5) parole; or, (6) eligible for the benefits of the Immigration Nursing Relief Act and filed before October 1991. *See* ECF No. [11] at 5 (citing 8 C.F.R. § 245.1(d)(1)). The fourth category, "in asylee status" refers to persons whose asylum applications have been granted, and not persons who have applications pending. *Id.* Defendants denied the application on that ground. Although Plaintiffs have been in

3

the country legally, the Parties agree that their "lawful status" has not been continuous. Plaintiffs' applications acknowledged that their "lawful status" in the United States "lapsed between April 14, 2018, when their B-2 status expired, through May 26, 2021, when USCIS granted them TPS." ECF No. [4] at 16.

However, Plaintiffs argue that there is an exception to this rule, and that the facts of this case fit the exception. Specifically, adjustment of status is still available to noncitizens if their lapse in status was "through no fault of [their] own or for technical reasons" (the "no fault exception"). *Id.* (quoting 8 U.S.C. § 1255(c)(2)). Plaintiffs argued that because Mr. Issrail "filed his application for asylum *before* that lapse in status . . . . the timely filing of the asylum application brought their cases within 8 U.S.C. § 1255(c)(2)'s no-fault exception." *Id.* Defendants disagreed, and found that Plaintiffs did not meet the no fault exception, because "[a]lthough the adjustment-related regulations permit an exception for failure to maintain lawful status for technical reasons resulting from inaction of USCIS if the applicant had a pending request to maintain status, an asylum request is *not a request to maintain status*" but rather "'a request to maintain status' [refers] only to a request to renew or change *nonimmigrant status*." ECF No. [11] at 10. The Government thus denied Plaintiffs' application. ECF No. [4] at 17.

## II.   THE INSTANT ACTION

Plaintiffs' Complaint alleges that Defendants violated the Administrative Procedure Act (the "APA") by failing to correctly apply the USCIS regulations and arbitrarily discriminating against Plaintiffs as asylum applicants (Count I), and by failing to consider the agency's past practice (Count II). ECF No. [1] ¶¶ 86–108. Plaintiffs also allege that Defendants' denial of their application for adjustment of status constitutes an *ultra vires* agency action. *Id.* ¶¶ 109–17. Plaintiffs filed their Motion for Preliminary Injunction seeking expedited consideration because "[u]nless relief is granted by September 30, 2022, there will be no legal mechanism to remedy

USCIS's unlawful decisions because that is the statutory deadline by which all Diversity Lottery visa numbers must be issued." ECF No. [4] at 8–9.  Plaintiffs ask that the Court "order USCIS to approve Plaintiffs' applications by September 30, 2022" or to "order the Department of State (included as a nominal defendant in this lawsuit through its agency head, Secretary Blinken) to set aside four visa numbers for the Fiscal Year 2022 visa lottery for Plaintiffs' cases" in order to "ensure the availability of meaningful relief after September 30, 2022 in the event USCIS fail[s] to approve Plaintiffs' applications by that statutory deadline." ECF No. [1] at 20.

On the merits, Plaintiffs argue that they fall within the no-fault exception because they timely filed their asylum applications before their B-2 nonimmigrant status lapsed. *Id.* at 10–11. Plaintiffs cite to USCIS's regulation, which provides that a noncitizen's failure to maintain lawful status may be excused if the "violation resulte[d] from inaction of the [Immigration] Service." *Id.* (citing 8 C.F.R. § 245.1(d)(2)(ii)).  Accordingly, Plaintiffs contend that their status lapsed "only because USCIS 'has not yet acted on [the] request'" for asylum. *Id.* at 11 (quoting 8 C.F.R. § 245.1(d)(2)(ii)).

In response, Defendants urge the Court to dismiss the case and deny the Motion for Preliminary Injunction because the Court lacks jurisdiction.  ECF No. [12].  Specifically, the Government argues that Plaintiffs' adjustment of status applications are governed by 8 U.S.C. § 1255, and that 8 U.S.C. § 1252(a)(2)(B)(i) precludes judicial review of "decisions regarding the granting of relief under § 1255." *Id.* at 7.  The Government contends this reading of the statutory provisions is governed by the recent United States Supreme Court decision *Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022).  *Patel* held that "8 U.S.C. § 1252(a)(2)(B)(i), 'prohibits review of *any* judgment *regarding* the granting of relief under § 1255 and the other enumerated provisions.'" *Id.* at 1 (quoting *Patel*, 142 S. Ct. at 1622) (emphasis in original).  Although the Government acknowledges that *Patel* concerned a factual challenge to an adjustment of status in the context of

5

a removal proceeding, the Government argues the same reasoning applies to this case. *Id.* at 7–8.

As to the merits, the Government argues that USCIS's denial based on finding that the no fault exception does not apply to Plaintiffs was not arbitrary, capricious, or otherwise unlawful. The Government notes that 8 U.S.C. § 1255(c)(2) recognizes six specific types of lawful immigration status: "(1) lawful permanent resident; (2) admitted as a nonimmigrant and whose initial period of admission has not expired or has been extended; (3) refugee; (4) asylee; (5) parole; or, (6) eligible for the benefits of the Immigration Nursing Relief Act and filed before October 1991." *Id.* at 5 (citing 8 C.F.R. § 245.1(d)(1)). The Government further notes that "asylee" status "refers to persons whose asylum applications have been granted and not revoked" as opposed to "asylum seekers, who are not included in the list of 'lawful immigration status.'" *Id.* Finally, the Government contends that pursuant to 8 C.F.R. § 245.1(d)(2), the exception applies to "four particular circumstances," none of which are present here. *See id.* at 5–6.

In their Response, Plaintiffs note that *Patel* reserved deciding the jurisdictional issue of this case, and that the Court should "hold[] that Section 1252(a)(2)(B)(i) does not strip review of legal and constitutional claims, regardless of the procedural posture in which those claims are raised." ECF No. [15] at 7. Plaintiffs attempt to distinguish the instant case from the reasoning in *Patel* by arguing that "once Section 1252(a)(2)(B)(i) is interpreted to allow for review of legal and constitutional claims in the petition-for-review context (as Section 1252(a)(2)(D) demands), that same statutory text must be given the same jurisdiction-preserving construction in all its applications and procedural contexts." *Id.* at 8. According to Plaintiffs, "Section 1252(a)(2)(B)(i) must be interpreted to preserve review of legal and constitutional claims regardless of the context in which it applies." *Id.* Plaintiffs cite to *Clark v. Martinez*, 543 U.S. 371 (2005) and *United States v. Santos*, 553 U.S. 507 (2008) in support of this argument. Plaintiffs also cite to the strong presumption in favor of judicial review, given that the Government's reading will leave Plaintiffs

6

without any ability to challenge their claims. *Id.* at 5.

In their Reply, the Government argues that "the plain text of § 1252(a)(2)(B)(i) and *Patel v. Garland*, 142 S. Ct. 1614 (2022)" make clear that Section 1252(a)(2)(B)(i) strips this Court of jurisdiction even if Plaintiffs will not be able to obtain any judicial review on their claims in the future in removal proceedings. ECF No. [19] at 1. The Government also provides examples to show that "the non-reviewability of immigration decisions is not limited to this specific case or context." *See id.* at 1–3. The Government contends that Congress has the authority over whether and how to confer jurisdiction, and "Congress has not *conferred* on district courts the jurisdiction to review legal questions relating to adjustment of status applications by including an exception in section 1252(a)(2)(B) as it did with circuit courts of appeals in 8 U.S.C. § 1252(a)(2)(D)." *Id.* at 3. Similarly, the Government argues the "Court should not order the Department of State to reserve the visas [as injunctive relief] because Congress has mandated that a diversity visa applicant's eligibility terminates at the end of the fiscal year." *Id.* at 5.

In their Surreply, Plaintiffs note that the Government acknowledges that, under the Government's interpretation of Section 1252(a)(2)(B)(i), individuals like Plaintiffs will have *no* means of judicial review. ECF No. [22] at 1. Because Plaintiffs are not in removal proceedings and the Government's reading of the statute only allows for legal challenges to the Circuit Court upon an order of removal, Plaintiffs' challenge to the agency decision at issue will not be heard. Plaintiffs also argue that the Government's citation to other examples where Congress has stripped courts of jurisdiction "pale in comparison to *this* jurisdictional provision as interpreted by the Government." *See id.* at 2–3 (emphasis in original). Finally, Plaintiffs note that "adopting Plaintiffs' interpretation may well preserve judicial review in district court only for diversity visa applicants" considering that "the exploding year-end deadline—a feature unique to this visa category—forecloses further administrative review in removal proceedings." *Id.* at 3. Plaintiffs

also argue that the Government fails to show how reserving visas would be unfair or prejudicial, since the Government has previously wasted 40,000 diversity visa lottery numbers. *Id.* at 4.

### III.   ANALYSIS

The substantive legal issue addressed in the Complaint is whether the "no fault" exception of 8 U.S.C. § 1255(c)(2) applies to a noncitizen in lawful immigration status who applies for asylum before their lawful status expires, and the noncitizen's immigration status lapses when USCIS fails to timely adjudicate the asylum application. *See* ECF No. [4] at vii.  The few district courts that have considered this issue prior to *Patel* are split, and no Circuit Court has considered the issue.  *See e.g., Somaysoy v. Ow*, 536 F. Supp. 3d 634, 637 (C.D. Cal. 2021); *Sayin v. United States*, No. 18-cv-00643, 2018 WL 4624827 (W.D. Tex. Sept. 26, 2018); *Araujo Perez v. Blinken*, 569 F. Supp. 3d 539, 547 (S.D. Tex. 2021).

Nevertheless, the Government argues that this Court is without jurisdiction to decide the issue.  Specifically, the Government contends that legal issues concerning adjustment of status, such as the issue here, can only be heard by the Circuit Court upon a challenge to a removal proceeding.  There is no dispute, however, that Plaintiffs are not in removal proceedings, and will not be in removal proceedings by September 30, 2022, the date by which they must adjust status under the diversity visa program.  In short, Plaintiffs argue that the Government's reading of the statute "leaves people like Plaintiffs without any judicial forum to have their claims heard—no matter how egregious the agency's legal or constitutional violation." ECF No. [22] at 1.

We begin with the relevant statutes.  There is no dispute that Plaintiffs' claims are governed by 8 U.S.C. § 1255.  Under Section 1255, the adjustment of status provision of the INA, a noncitizen is barred from adjusting their status if they "failed . . . to maintain continuously a lawful status since entry into the United States."  ECF No. [4] at 10 (quoting 8 U.S.C. § 1255(c)(2)). There is also no dispute that the Court's jurisdiction to hear matters under that Section is set forth

in 8 U.S.C. § 1252(a)(2)(B)(i).  The language of Section 1252(a)(2)(B)(i) specifically "precludes judicial review of any judgment, decision, or actions pertaining to adjustment of status maters under 8 U.S.C. § 1255." ECF No. [19] at 3.  The Government contends that this language is a "jurisdiction stripping provision" and that the provision applies regardless of whether the judgment, decision, or action is made in removal proceedings.  *Id.* (quoting 8 U.S.C. § 1252(a)(2)(B)(i)).

The Supreme Court recently interpreted Section 1252(a)(2)(B)(i)'s prohibition on judicial review in *Patel v. Garland*, 142 S. Ct. 1614 (2022).  The Court held that a petitioner in removal proceedings may not seek judicial review of factual findings regarding an immigration agency's decision.  *Patel*, 142 S. Ct. at 1627.  In *Patel*, the petitioner was a noncitizen who challenged the denial of his adjustment of status application and was subsequently placed in removal proceedings.  *Id.* at 1619–20.  USCIS determined that Patel was not eligible to adjust his status because he checked a box stating that he was a United States citizen when applying for a driver's license, violating Section 1182(a)(6)(C)(ii)(I), which prohibits a noncitizen from adjusting status if they have falsely represented themselves as a citizen of the United States for any purpose or benefit under state or federal law.  *Id.* at 1620.  The specific issue addressed by the Supreme Court in *Patel* was whether that factual finding, that Patel had made a false representation about this citizenship, was subject to review by a court.

The Supreme Court found that USCIS's factual determination was not subject to any judicial review.  In doing so, the Court found that the word "judgment" as used in Section 1252(a)(2)(B)(i) refers to "any authoritative decision" such that the jurisdictional bar "'encompasses any and all decisions relating to the granting or denying' of discretionary relief." *See id.* at 1621–22 (adopting *amicus curiae's* definition of "judgment").  In so finding, the Court recognized that the statute's jurisdictional bar did have an important qualification, specifically,

9

that the statute should not be "construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.'" *Id.* at 1619 (quoting § 1252(a)(2)(D)).  The Court reasoned that "Section 1252(a)(2)(D), which preserves review of constitutional claims and questions of law, reinforces th[e] conclusion" that Section 1252(a)(2)(B)(i) bars review of factual findings." *Id.* at 1623.

Although Patel was in removal proceedings, the Supreme Court interpretated the statute at issue here and its interpretation of the statute is controlling and clear: the only challenge to any decision pertaining to an adjustment of status is a legal challenge made to a Circuit Court upon an order of removal.  The Court's interpretation left no room for any other review by any court.  To be sure, the Court's interpretation is vast and leaves noncitizens who are not in removal proceedings without any ability to challenge the decisions of USCIS with respect to adjustment of status.  However, that appears to be what the majority intended.  Indeed, Justice Gorsuch, writing for the dissent in *Patel*, noted that "[t]he majority's interpretation has the further consequence of denying *any* chance to correct agency errors in processing green-card applications outside the removal context." *Id.* at 1637 (Gorsuch, J., dissenting).  Justice Gorsuch argued that there is a two-step process for an individual to obtain adjustment of status: (1) "[a]t the first step, the government must determine if an individual is statutorily eligible for an adjustment of status" and (2) "once an individual has established his statutory eligibility for relief, the Attorney General or his designee is entitled to grant or deny an adjustment of status 'in his discretion.'" *Id.* (Gorsuch, J., dissenting) (citing §§ 1255(a), (i)(2)).  While Justice Gorsuch acknowledged that "the exception in § 1252(a)(2)(B)(i) creates a special rule insulating from judicial review the second and purely discretionary decision[,]" he noted that "nothing in it disturbs the general rule that courts may entertain challenges to the [Board of Immigration Appeals'] factual findings and legal analysis associated with its first-step eligibility determination." *Id.* at 1631 (Gorsuch, J., dissenting).

Accordingly, Justice Gorsuch expressed concern that the majority's holding would render unreviewable the findings at the first step. Justice Gorsuch warned that the majority's "reasoning promises that countless future immigrants will be left with no avenue to correct even more egregious agency errors," *id.* at 1630 (Gorsuch, J., dissenting), and noted that the decision "turns an agency once accountable to the rule of law into an authority unto itself," *id.* at 1637 (Gorsuch, J., dissenting).

The concern that the Court's decision would leave immigrants without any avenue to challenge agency actions was addressed by the majority. In response to concerns lodged by the dissent that "USCIS decisions will be wholly insulated from judicial review[,]" the Court noted that although it was not deciding that issue, "it is possible that Congress did, in fact, intend to close that door" by "precluding all review of USCIS denials of discretionary relief" that "are made outside of the removal context" since "subparagraph (D) preserves review of legal and constitutional questions only when raised in a petition for review of a final order of removal." *Id.* at 1626. Although the Court may not have decided the issue before us now, there is simply no way to read the *Patel* decision as permitting the legal challenge posed by Plaintiffs. Indeed, this conclusion is consistent with other courts within this District. *See, e.g., Ahmed v. Alejandro Mayorkas, Sec'y of U.S. Dep't Sec.*, No. 22-cv-60141, 2022 U.S. Dist. LEXIS 102043, at *8 (S.D. Fla. Mar. 28, 2022) ("Because Plaintiff seeks APA review of Defendants' [USCIS] denial of adjustment of status under 8 U.S.C. § 1255, the Court lacks jurisdiction to entertain such review pursuant to § 1252(a)(2)(B)(i) and *Patel.*"); *Klimenko v. Gicha*, No. 20-cv-24913, 2021 U.S. Dist. LEXIS 155545, at *5 (S.D. Fla. Aug. 18, 2021)( *"*[P]ursuant to *Patel* and section 1252(a)(2)(B)(i), the Court lacks subject matter jurisdiction to review Defendants' [USCIS] denial of Plaintiff's I-485 applications to adjust status."); *Commandant v. Rinehart*, No. 20-cv-23630, 2021 U.S. Dist. LEXIS 20474, at *4-5 (S.D. Fla. Feb. 1, 2021) ("In the present case, Plaintiffs seek APA review

of Defendants' denial of adjustment-of-status applications under 8 U.S.C. section 1255 . . . . The Court lacks jurisdiction to entertain such review under section 1252(a)(2)(B)(i)") (internal citations omitted).[4] As another court recently noted, regardless of the "significant public policy concerns around withdrawal of district court review over nondiscretionary USCIS judgments in cases where a petitioner is not in removal proceedings and is not imminently likely to be placed in removal proceedings[,]" this Court must follow the Supreme Court's majority decision, which holds that "Section 1252(a)(2)(B)(i) deprives this Court of jurisdiction to hear Plaintiff's claim[,]" though the undersigned "does not adopt lightly th[is] interpretation." *See Rabinovych v. Mayorkas*, No. 21-cv-11785, 2022 U.S. Dist. LEXIS 156966, at *17-18 (D. Mass. Aug. 31, 2022).

Plaintiffs only advance one argument for a different reading of the statute. Specifically, Plaintiffs cite to *Clark v. Martinez*, 543 U.S. 371 (2005) for the proposition that "the meaning of words in [the] statute cannot change with the statute's application" such that "Section 1252(a)(2)(B)(i) must be interpreted to preserve review of legal and constitutional claims regardless of the context in which it applies." ECF No. [15] at 8 (citing *Santos*, 553 U.S. at 522). In *Clark*, the Supreme Court analyzed Section 1231(a)(6) of the INA, which authorizes detention of noncitizens beyond the ordinary 90-day limit on detention. *Clark*, 543 U.S. at 373. The statute includes three categories of noncitizens. *Id.* Specifically, the text of 8 U.S.C. § 1231(a)(6) reads, a noncitizen (1) "ordered removed who is inadmissible under section 1182 of this title," (2) "removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or" (3) "who has been determined by the [Secretary] to be a risk to the community or unlikely to

---

[4] At the Hearing, the Court inquired whether there are other contexts in which the agency's decisions were exempt from judicial review. The Government responded to the Court's inquiry by citing other examples "where Congress has explicitly eliminated judicial review of executive immigration decisions or actions." *See* ECF No. [19] at 1–3. Although Plaintiffs ably responded that those situations were not applicable, *see* ECF No. [22] at 2, ultimately, these examples are not determinative of the issue, as *Patel* mandates this Court's conclusion.

comply with the order of removal may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.* at 377–78. The Court held that its prior ruling that this provision authorized detention of noncitizens "in the second category only as long as 'reasonably necessary' to remove them from the country" had to apply to the other two categories as well. *Id.* at 378. In short, the Court ruled that the statute had to be read so that the same relief would be offered to each category of persons. From there, Plaintiffs argue that the reasoning in *Clark* prohibits Defendants' reading of Section 1252(a)(2)(B)(i) because it would "allow for review of legal and constitutional claims in one procedural context (on petition for review)" and not in another (no petition for review and not in removal proceedings). *See* ECF No. [15] at 9.

The reasoning in *Clark,* however, has no application here. Section 1231(a)(6), the provision at issue in *Clark*, contained three different categories of individuals, and the Court had previously applied a specific construction to one of those categories. *Clark*, 543 U.S. at 378. The Court determined that the same construction must be applied to the other two categories, because "[t]he operative language of § 1231(a)(6) . . . applies without differentiation to all three categories of aliens that are its subject." *Id.* Thus, the Court analyzed how those particular provisions in that statute, a different one than the one at issue here, must be read so as not to be internally inconsistent. The Court's conclusion does not stand for the assertion that Plaintiffs argue, namely, that the statute's conferral of jurisdiction to the Circuit Courts should extend to a District Court for the sake of consistency. *Clark* simply does not stand for that proposition, nor is the Court aware of any authority that would support this position.

Accordingly, although Plaintiffs may have alleged meritorious claims, the *Patel* decision

13

mandates that courts no longer preside over such claims.[5] The Court does not come to this Recommendation lightly. Plaintiffs fled an oppressive and violent regime, arrived and remained in our country legally, made America the home for their two children, and today, come before the Court with a legitimate legal challenge to a government agency's decision. The ability to challenge an agency's action on legal grounds is rarely prohibited, even for immigrants who have received a removal order and who have the right to raise legal challenges before our Circuit Courts. These Plaintiffs, however, are in a unique position, finding themselves unable to raise any challenge because there is no removal proceeding pending. Nevertheless, the Supreme Court's recent interpretation of a court's jurisdiction over claims pertaining to the adjustment of status leaves no room for doubt that the claim at hand is simply precluded from review. It is a legal reality that Justice Gorsuch well-articulated as "hardly the world Congress ordained," and yet, it is the world in which we find ourselves. *See Patel*, 142 S. Ct. at 1637 (Gorsuch, J., dissenting).

## IV. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss, ECF No. [12], be **GRANTED** and that Plaintiffs' Motion for Preliminary Injunction, ECF No. [4], be **DENIED AS MOOT**.

---

[5] Indeed, Plaintiffs have cited to other decisions where courts have granted similar relief to that sought here, arguably satisfying the reasonable likelihood of success on the merits prong to the preliminary injunction request. *See* ECF No. [4] at 8 (citing *Somaysoy v. Ow*, 536 F. Supp. 3d 634, 637 (C.D. Cal. 2021); *Sayin v. United States*, No. 18-cv-00643, 2018 WL 4624827 (W.D. Tex. Sept. 26, 2018)). Additionally, Plaintiffs will suffer irreparable injury—the loss of an opportunity to obtain a green card—without the relief they seek in the Motion for Preliminary Injunction. Finally, given that the fiscal year is approaching its end, the Government would not suffer legitimate harm if ordered to hold the visas, and resolution of legal issues concerning immigration is in the public's interest. *See Gomez v. Trump*, 490 F. Supp. 3d 276, 290 (D.D.C. 2020), *appeal dismissed*, No. 20-5332, 2020 WL 7688214 (D.C. Cir. Dec. 14, 2020) ("The court will order the State Department to reserve 9,095 diversity visa numbers after September 30, 2020, pending final adjudication of this matter."),

### V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **THREE (3) DAYS** of being served with a copy of this Report and Recommendation. Specifically, any objection shall be filed by **12:00 p.m. on Monday, September 19, 2022**. The shortened objection period is necessary in light of the exigency of this case, given the September 30, 2022 statutory deadline for all Diversity Lottery visa numbers to be issued. In addition, the Parties did not object to the shortened period which was proposed during the oral argument. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on September 14, 2022.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE